UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  CR-21-271-CBG |
| ) | |
| LLOYD RAY HATLEY, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Now before the Court is Defendant's Motion to Dismiss (Doc. No. 69), filed through counsel by Defendant Lloyd Ray Hatley. The Government has filed a Response in opposition (Doc. No. 75). In his Motion to Dismiss, Defendant seeks to dismiss Count Four of the Second Superseding Indictment, arguing that title 47, section 11-901b of the Oklahoma Statutes—Count Four's underlying predicate offense—is unconstitutionally vague as applied to Defendant. *See* Def.'s Mot. at 2. Alternatively, Defendant moves to dismiss either Count One or Count Four of the Second Superseding Indictment on the basis of multiplicity. *See id.* at 6.

   I.   *Background*

On February 22, 2017, a Dodge Ram driven by Defendant, an Indian, rear-ended a Pontiac Grand Am on State Highway 1 in Pontotoc County, Oklahoma, in Indian Country as defined by federal law. The Pontiac's backseat passenger, Mary Nappa, a non-Indian, died at the scene. The other occupants of the Pontiac, both non-Indians, sustained serious injuries. The Oklahoma Highway Patrol responded to the accident and conducted a

subsequent investigation. The investigation resulted in state charges against Defendant in Pontotoc County District Court, which were dismissed pursuant to *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), and later federal charges brought in this Court.

A Second Superseding Indictment was returned on February 22, 2022 (Doc. No. 57), charging Defendant with the following crimes:

1. Count One: Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112, 1151, and 1153;
2. Count Two: Driving Under the Influence Resulting in Great Bodily Injury, in violation of 18 U.S.C. §§ 13, 13(b)(2)(A), 1151, and 1152; and 47 O.S. § 11-904(B);
3. Count Three: Driving Under the Influence Resulting in Great Bodily Injury, in violation of 18 U.S.C. §§ 13, 13(b)(2)(A), 1151, and 1152; and 47 O.S. § 11-904(B); and
4. Count Four: Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112, 1151, and 1153.

Second Superseding Indictment (Doc. No. 57).

Count One and Count Four refer to the same victim: Mary Nappa. *See* Second Superseding Indictment at 1, 3. Count One charges in relevant part that Ms. Nappa was killed while Defendant committed an unlawful act not amounting to a felony by driving under the influence of a controlled substance. *See id.* at 1. Count Four charges in relevant part that Ms. Nappa was killed while Defendant committed an unlawful act not amounting to a felony by failing "to devote his full time and attention to driving," taking the quoted

language from title 47, section 11-901b of the Oklahoma Statutes.  *Id.* at 3; *see* Bill of Particulars at 2 (Doc. No. 81).

   II.  *Discussion*

      A.  <u>Void-for-Vagueness Doctrine</u>

   Defendant contends that the Court must dismiss Count Four because section 11-901b "is not sufficiently defined to give [Defendant] reasonable notice of what conduct it prohibited and thus creates a danger of arbitrary and discriminatory enforcement."  Def.'s Mot. at 2.  Specifically, Defendant argues that "nowhere in this statute has the legislature defined what it means to devote one's full time and attention to driving," and so section 11-901b risks criminalizing driving behavior that may be necessary for safety reasons, such as taking one's eyes off the road to check a blind spot.  *Id.* at 4.  Defendant also contends that section 11-901b "fails to provide police officers, prosecutors, juries, and courts with minimal guidelines to govern enforcement," and so is susceptible to arbitrary enforcement.  *Id.* at 5.

   The Government responds that section 11-901b is not unduly vague as applied to Defendant because "the application of 47 Okla. Stat. § 11-901b to the facts of this case is clear."  *See* Gov't's Resp. at 6.  Specifically, in its Bill of Particulars, the Government states that it intends to rely on the following evidence to prove that Defendant failed to devote his full time and attention to driving in violation of section 11-901b:

   a.  Defendant crashed into the rear of the Pontiac;
   b.  The roadway was dry;
   c.  The weather was clear;
   d.  Defendant admitted the crash was his fault;

3

e. Defendant admitted that he looked away from the road;

f. The crash data shows that the Pontiac's brakes were applied beginning approximately eight seconds before the crash;

g. Defendant admitted that the Pontiac's brake lights were working when he stated that he saw the Pontiac's brake lights before the crash;

h. Given the grade of the roadway, Defendant should have been able to see the Pontiac's brake lights activated the entire approximately eight seconds;

i. The crash data shows that the Pontiac had decelerated almost to a stop before the crash;

j. The crash data shows that Defendant, despite driving nearly 70 miles per hour, did not begin braking until less than one second before he crashed into the rear of the Pontiac;

k. Defendant was driving in excess of the 65 mile per hour speed limit; and

l. Crash reconstruction shows that the Pontiac did not abruptly pull onto the road in front of Defendant, but rather that Defendant simply crashed directly into the rear of the Pontiac.

Bill of Particulars at 2-3.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[J]udicial review of a penal statute generally is restricted to consideration of the statute as applied in a particular case," *United States v. Welch*, 327 F.3d 1081, 1094 (10th Cir. 2003), and so "ordinarily, one to whose conduct a statute clearly applies may not successfully challenge it for

4

vagueness." *United States v. Platte*, 401 F.3d 1176, 1190 (10th Cir. 2005) (alteration and internal quotation marks omitted).

"When considering a vagueness challenge to a penal statute, courts begin with the presumption that the statute comports with the requirements of federal due process and must be upheld unless satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution." *Welch*, 327 F.3d at 1094 (internal quotation marks omitted). "Due process requirements are not 'designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). "The Constitution does not, however, impose impossible standards of specificity," and "general statements of the law are not inherently incapable of giving fair and clear warning." *Platte*, 401 F.3d at 1189 (alteration and internal quotation marks omitted).

Title 47, section 11-901b of the Oklahoma Statutes, the statute that provides the underlying predicate offense for Count Four, prescribes that:

> The operator of every vehicle, while driving, shall devote their full time and attention to such driving.
>
> No law enforcement officer shall issue a citation under this section unless the law enforcement officer observes that the operator of the vehicle is involved in an accident or observes the operator of the vehicle driving in such a manner that poses an articulable danger to other persons on the roadway that is not otherwise specified in statute.

Okla. Stat. tit. 47, § 11-901b.

5

Although the duty is stated in general terms, section 11-901b provides fair warning to ordinary drivers that certain driving behavior is prohibited. The Oklahoma legislature need not foresee and detail every potential factual situation for section 11-901b to pass constitutional muster. *See Welch*, 327 F.3d at 1094. As applied to the instant case, based on the Government's allegations, an ordinary driver would understand that taking one's eyes off the road for an extended amount of time while driving at a high rate of speed is a violation of traffic laws that can result in a serious accident. Failing to see that the Pontiac was braking in front of Defendant for approximately eight seconds is not analogous to Defendant quickly checking a blind spot or a rearview mirror. Defendant had fair warning that his alleged behavior was prohibited by section 11-901b.

Additionally, section 11-901b does not encourage arbitrary and discriminatory enforcement. By its own terms, section 11-901b limits an officer's ability to cite a driver under the statute to two specific situations: (1) where "the law enforcement officer observes that the operator of the vehicle is involved in an accident;" or (2) where the officer "observes the operator of the vehicle driving in such a manner that poses an articulable danger to other persons on the roadway that is not otherwise specified in statute." Okla. Stat. tit. 47, § 11-901b. Without any authority, Defendant suggests that section 11-901b is being enforced arbitrarily in this case because prosecutors originally charged Defendant under a theory predicated on the allegation that Defendant was driving under the influence at the time of the collision. Adding a charge premised on section 11-901b in a superseding indictment does not demonstrate arbitrary enforcement of the statute. *Cf. United States v.*

6

*Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

    B.  <u>Multiplicity</u>

Defendant alternatively argues that the Court should direct the Government to dismiss either Count One or Count Four because those charges are multiplicitous and may improperly suggest to the jury that Defendant is guilty of at least one of the charges. *See* Def.'s Mot. at 6.

The concept of multiplicity "refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997); *see also United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1099 (D.N.M. 2012). "[M]ultiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal quotation marks omitted). The Tenth Circuit's "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause." *Id.* (internal quotation marks omitted).

"A decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court." *Johnson*, 130 F.3d at 1426. "[T]he government may submit multiplicitous charges to the jury," but "if a defendant is convicted of both charges, the district court must vacate one of the convictions." *United States v. Frierson*, 698 F.3d 1267, 1269 (10th Cir. 2012) (internal quotation marks omitted); *see also United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007).

The Tenth Circuit has noted the potential risks of presentment of multiplicitous counts to a jury:

> The risk of a trial court not requiring pretrial election is that it may falsely suggest to a jury that a defendant has committed not one but several crimes. Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue, and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges.

*Johnson*, 130 F.3d at 1426 (citation and internal quotation marks omitted).

The Government concedes that Counts One and Four are multiplicitous. *See* Gov't's Resp. at 8 ("Should Defendant be convicted of both Counts One and Four, the Government recognizes that one of the counts will need to be dismissed."). The Government argues, however, that the risk of juror confusion or a compromised verdict is minimal in this case because: (1) the Government does not intend to rely on inconsistent evidence or legal theories to prove the counts; (2) the underlying facts are not complex given that the charges involved the same incident and victim; and (3) the jury could convict on one, both, or neither of the relevant counts. *See id.*

Having reviewed the parties' contentions, and "given that the concern is with only two counts," the Court concludes that requiring an election of counts is not appropriate at this time. *United States v. Presley*, No. CR-21-49-RAW, 2021 WL 4303494, at *3 (E.D. Okla. Sept. 21, 2021). The Court will permit the Government to attempt to address the multiplicity of Counts One and Four through the submission of appropriate proposed jury instructions. *See United States v. Hicks*, No. CR-21-379-BMJ (E.D. Okla.), Order of Jan.

21, 2022, at 2 (citing *United States v. Bolt*, 776 F.2d 1463, 1467 (10th Cir. 1985)); *United States v. Redbird*, No. CR-19-347-F (W.D. Okla.), Order of May 22, 2020, at 5.

The Court will consider the parties' proposed jury instructions, as well as additional argument from counsel if appropriate, "before determining whether both counts should go to the jury." *United States v. Martin*, No. CR-20-81-RAW, 2020 WL 7029145, at *2.

## CONCLUSION

The Court therefore DENIES Defendant's Motion to Dismiss (Doc. No. 69).

IT IS SO ORDERED this 22nd day of April, 2022.

_____
CHARLES B. GOODWIN
United States District Judge