UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LLOYD RAY HATLEY, )<br>)<br>Defendant. ) | Case No. CR-21-271-CBG |

### ORDER

Now before the Court is an Omnibus Motion in Limine (Doc. No. 50), filed through counsel by Defendant Lloyd Ray Hatley. The Government has responded. *See* Gov't's Resp. (Doc. No. 54). Having reviewed the parties' filings, the Court makes its determination.

### I.   *Background*

In the early afternoon of February 22, 2017, Defendant was involved in a two-vehicle collision on State Highway 1 in Pontotoc County, Oklahoma—a location within Indian Country as defined by federal law. Defendant's black 2013 Dodge Ram collided with the rear of a white Pontiac Grand Am (the "Pontiac"). Mary Nappa, the Pontiac's backseat passenger, died at the scene due to her injuries. The Pontiac's driver, Gay Ott, and front seat passenger, Stephen Ott, were airlifted to OU Medical Center in critical condition.[1] Defendant was taken by ambulance to the Chickasaw Nation Medical Center ("CNMC") to receive medical care.

---

[1] Both Gay Ott and Stephen Ott are now deceased.

At the CNMC, a blood draw was administered at the direction of Trooper Joshua Christian of the Oklahoma Highway Patrol.  Defendant's blood toxicology test results later revealed the presence of controlled substances.  While at the CNMC, Defendant also made statements in the presence of Trooper Christian and medical staff indicating that Defendant suffered from epileptic seizures and had been told by his doctor not to drive.

The Oklahoma Highway Patrol's investigation of the accident resulted in state charges against Defendant in Pontotoc County District Court.  Those charges were dismissed pursuant to *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), and federal charges brought in this Court.  Now, Defendant is charged in a Second Superseding Indictment with two counts of Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112, 1151, and 1153, and one count of Driving Under the Influence Resulting in Great Bodily Injury, in violation of 18 U.S.C. §§ 13, 13(b)(2)(A), 1151, and 1152, and title 47, section 11-904(B) of the Oklahoma Statutes.[2]  *See* Second Superseding Indictment (Doc. No. 57).

## II.     Applicable Standards

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy."  *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (internal quotation marks omitted).  Generally, the proponent of a motion in limine bears the burden of proof.  *See, e.g.*, *First Sav. Bank v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000); *Pinon*

---

[2] Count Three of the Second Superseding Indictment, Driving Under the Influence Resulting in Great Bodily Injury, in violation of 18 U.S.C. §§ 13, 13(b)(2)(A), 1151, and 1152, and title 47, section 11-904(B) of the Oklahoma Statutes, has been dismissed on the Government's motion.  *See* Order of Apr. 22, 2022 (Doc. No. 100).

*Sun Condo. Ass'n v. Atain Specialty Ins. Co.*, No. 17-cv-01595, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020).  A court's in limine rulings are preliminary and "subject to change when the case unfolds." *Luce v. United States*, 469 U.S. 38, 41 (1984).

   III.   *Defendant's Motion*

In his Omnibus Motion in Limine, Defendant seeks to exclude the following evidence from trial:

   A. Defendant's prior arrests for driving under the influence ("DUI");
   B. Defendant's blood toxicology test results;
   C. Defendant's statement regarding his prior epilepsy diagnosis;
   D. The written victim impact statements of Gay Ott and Stephen Ott;
   E. The medical opinions of Tiffany Ayala and Jeanette Stinnett;[3] and
   F. The written impact statement of Dr. Zahea H. Nappa.

The Court considers the admissibility of each item of evidence in turn.

   A.   Defendant's Prior DUI Convictions

Defendant's driving record (Doc. No. 50-2) reflects that Defendant has two prior convictions for driving under the influence of alcohol—the first on April 22, 1986, and the second on July 24, 1988.  Defendant argues that all evidence related to Defendant's prior DUI convictions must be excluded from evidence under Federal Rule of Evidence 404(b)(1) as improper propensity evidence.  *See* Def.'s Mot. at 2.

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with

---

[3] The Government's Witness List (Doc. No. 95) represents that Ms. Stinnett's first name is "Janette" rather than "Jeanette."

the character." Fed. R. Evid. 404(b)(1). Under Federal Rule of Evidence 404(b)(2), however, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). A prosecutor seeking to use evidence for the purposes permitted under Rule 404(b)(2) must provide reasonable notice of intent to use such evidence. *See id.* R. 404(b)(3).

The Government has not provided notice of intent to use Rule 404(b)(2) evidence and further represents that it does not intend to introduce this evidence in its case-in-chief. *See* Gov't's Resp. at 4. Based upon the Government's representation, Defendant's request to exclude evidence of his two prior DUI convictions is granted.[4]

### B. Defendant's Blood Toxicology Test Results

Defendant requests that evidence of his blood toxicology test results be excluded pursuant to title 47, section 756(C) of the Oklahoma Statutes. *See* Def.'s Mot. at 5. That state statute prescribes, "To be admissible in a proceeding, the evidence [shown by a test] must first be qualified by establishing that the test was administered to the person within two (2) hours after the arrest of the person." Okla. Stat. Ann. tit. 47, § 756(C). In response, the Government reincorporates its Response to Defendant's Motion to Suppress (Doc. No. 53), arguing that Defendant's blood toxicology test results are admissible under title 47,

---

[4] The Government further states that "such evidence could become relevant and admissible should Defendant testify or defense counsel 'open the door' during his questioning of Government witnesses." Gov't's Resp. at 4. If the Government concludes that arguments or evidence presented during the trial would allow presentation of evidence of the DUI convictions, the Government may request leave outside the presence of the jury to present any such evidence.

section 10-104(B) of the Oklahoma Statutes due to Defendant's consent to the blood draw and "under the good faith exception to the exclusionary rule." Gov't's Resp. at 4. The Government does not, however, directly respond to Defendant's argument that section 756(C) precludes admission of the test results at trial.

As a threshold matter, the Court finds that the two-hour-from-arrest requirement of section 756(C) is a state procedural rule not binding on this federal court. *Cf. United States v. Daras*, 164 F.3d 626 (4th Cir. 1998) (holding that a state statute providing that breath tests must be conducted by a person with proper training in order to be admitted into evidence was procedural and so not binding on a federal court, even in a federal prosecution based on state law assimilated under the Assimilative Crimes Act, 18 U.S.C. § 13); *United States v. Sain*, 795 F.2d 888, 890-91 (10th Cir. 1986) ("[The Tenth Circuit] [has] held that federal courts are not required to follow specific provisions of state law which go beyond establishing the elements of an offense and the range of punishment.").

Further, it is not clear that section 756(C) would apply in the way Defendant contends. As Defendant notes, the Oklahoma Court of Criminal Appeals ("OCCA") in *Napier v. State*, 821 P.2d 1062 (Okla. Crim. App. 1991), held—in a case where the defendant was not placed under arrest until several hours after a blood draw—that a two-hour-from-arrest time constraint similar to the one raised by Defendant here required exclusion of the test results, stating "[b]ecause no arrest was made until many hours after the blood was drawn in this case, the results of the blood test should not have been admitted." *Id.* at 1064. Eleven years after *Napier*, the OCCA in *Sanders v. State*, 60 P.3d 1048 (Okla. Crim. App. 2002), *overruled on other grounds by Stewart v. State*, 442 P.3d

5

158 (Okla. Crim. App. 2019), held that test results from a blood draw taken pursuant to section 10-104(B) at the time of an accident were admissible even though the defendant was not arrested until a month later. Looking to the same two-hour-from-arrest time constraint at issue in *Napier*, the OCCA found that the constraint did not apply, stating:

> Section 11-902 applies in a situation where the defendant is placed under arrest at the accident scene or shortly after the accident occurred (for instance at the hospital). Section 11-902 does not come into effect until the person has been arrested. Once the arrest has been made, the police have two hours in which to withdraw the blood for the blood alcohol test. In the case of a fatality accident, where the person is not arrested at the scene or shortly thereafter (at the hospital), the police are under a duty to conduct the blood alcohol test as soon as practicable.

*Id.*

In light of these authorities, Defendant's request to exclude the blood toxicology results is denied.

### C. Defendant's Statement Regarding Prior Epilepsy Diagnosis

Defendant requests that any evidence of his statements to medical staff that Defendant suffers from epileptic seizures and that his doctor has recommended that Defendant not drive because of the seizures be excluded as not relevant pursuant to Federal Rule of Evidence 402, arguing that Defendant has not been charged on the basis of his medical condition. *See* Def.'s Mot. at 7. Alternatively, Defendant argues that any probative value of Defendant's statement regarding his prior epilepsy diagnosis is outweighed by the danger of confusing the issues or misleading the jury, and so those statements must be excluded under Federal Rule of Evidence 403. *See id.*

The parties' briefing of this issue is inadequate to explain the basis on which the Government might seek to introduce evidence regarding the challenged statements or, more generally, Defendant's medical condition. Defendant's motion is tentatively granted; however, the Government shall advise the Court of when during the trial it expects to address this subject and the Court will hear further argument at that time.

### D. Written Victim Impact Statements of Gay Ott and Stephen Ott

Defendant requests that the written victim impact statements of Gay Ott and Stephen Ott (Doc. No. 50-7), now both deceased, be excluded under Federal Rule of Evidence 802, arguing that the statements are inadmissible hearsay evidence and that admission of the statements would violate Defendant Sixth Amendment right to confront adverse witnesses. *See* Def.'s Mot. at 8. The Government states that it does not intend at present to introduce the Otts' written statements. *See* Gov't's Resp. at 6. Therefore, Defendant's request is granted.[5]

### E. Improper Medical Opinions of Ms. Ayala and Ms. Stinnett

Defendant requests that the Court exclude all testimony from Ms. Ayala and Ms. Stinnett suggesting that Gay Ott would have lived longer if not for the injuries she sustained

---

[5] If the Government concludes that arguments or evidence presented during the trial would allow presentation of evidence of the Otts' statements, the Government may request leave outside the presence of the jury to present any such evidence.

in the 2017 accident under Federal Rule of Evidence 701, arguing that such testimony constitutes improper medical opinions.  *See* Def.'s Mot. at 10.

Ms. Ayala and Ms. Stinnett are family members of Gay Ott.  *See id.*  Lay witness testimony in the form of an opinion is restricted to an opinion that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  "Rule 701 does not permit a lay witness to express opinion as to matters which are beyond the realm of common experience and which require special skill and knowledge of an expert witness."  *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (internal quotation marks omitted).  "A lay witness cannot testify to any opinions regarding causation under rule 701, because opinions regarding causation of a medical condition require 'knowledge derived from precious professional experience, which falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701.'"  *Montoya v. Sheldon*, 286 F.R.D. 602, 613 (D.N.M. 2012) (alteration omitted) (quoting *James River Ins. Co.*, 658 F.3d at 1215).

The Government states that it does not intend to introduce the reports detailing the statements at issue (Doc. Nos. 50-8, 50-9).  *See* Gov't's Resp. at 6.  The Government argues, however, that Ms. Ayala and Ms. Stinnett should be permitted to testify that Mary

Nappa died in the accident and to describe the Otts' injuries and subsequent medical treatment to establish that Gay Ott sustained great bodily injury in the accident. *See id.*

The Court grants this aspect of Defendant's motion and finds that testimony from Ms. Ayala and Ms. Stinnett to the effect that Gay Ott would have lived longer but for the injuries she sustained in the accident is inadmissible as improper medical opinion. Ms. Ayala and Ms. Stinnett may testify, however, regarding Mary Nappa's death and Gay Ott's injuries and treatment, so long as the testimony describes what the witnesses perceived or experienced or is otherwise lay opinion testimony falling within the parameters of Federal Rule of Evidence 701.

### F.  Written Victim Impact Statement of Dr. Zahea H. Nappa

Defendant requests that the written impact statement of Dr. Zahea H. Nappa (Doc. No. 50-10), Mary Nappa's mother and Gay Ott's sister, be excluded as inadmissible hearsay under Federal Rule of Evidence 802. *See* Def.'s Mot. at 12. Defendant also argues that introduction of Dr. Nappa's written statement would violate Defendant's Sixth Amendment right to confront adverse witnesses. *Id.* The Government states that it does not at present intend to introduce Dr. Nappa's written statement into evidence. *See* Gov't's Resp. at 7. Therefore, Defendant's request is granted.[6]

---

[6] If the Government concludes that arguments or evidence presented during the trial would allow presentation of evidence of Dr. Nappa's statement, the Government may request leave outside the presence of the jury to present any such evidence.

CONCLUSION

For the forgoing reasons, Defendant's Omnibus Motion Limine (Doc. No. 50) is GRANTED IN PART and DENIED IN PART, all as set forth above.

IT IS SO ORDERED this 25th day of April, 2022.

*Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge